IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN SAMUEL LEIGH,
        Petitioner,

v.                                            Civil action no. 3:04CV22
                                              Criminal action no. 3:00CR57

UNITED STATES OF AMERICA,
        Respondent.

## MEMORANDUM OPINION AND REPORT AND RECOMMENDATION

### I. PROCEDURAL HISTORY

On March 23, 2004, the *pro se* petitioner filed a Motion to Vacate Sentence and Set Aside Conviction Under 28 U.S.C. § 2255. By Order entered on April 8, 2004, the Court ordered the respondent to answer the motion. On May 7, 2004, the petitioner filed an amendment to page four of his petition. On June 10, 2004, the respondent filed Response of United States to Motion Made Pursuant to 28 U.S.C. § 2255. On July 12, 2004, the petitioner filed a Motion for Default Judgment. On July 19, 2004, the petitioner filed a Motion to Stay or Continue so he could raise a claim under Blakely v. Washington, 124 S. Ct. 2531 (2004). On September 13, 2004, the petitioner filed Reply to Government Response to Motion to Vacate Sentence and Set Aside Conviction. In his response, he raised an additional claim based on Blakely v. Washington, 124 S. Ct. 2531 (2004).

Thus, this matter which is pending before me for initial review and report and recommendation pursuant to LR PL P 83.15, is ripe for review.

### A. Conviction and Sentence

The petitioner was convicted by jury in the Northern District of West Virginia of conspiracy to possess with the intent to distribute and to distribute fifty grams or more of cocaine base in

violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(Count One) and distribution of .24 grams of cocaine base in violation of 21 U.S.C. §841(a)(1).

On August 21, 2001, the Court sentenced the petitioner to 420 months imprisonment on Count One and 240 months on Count Sixty-Three to run concurrently. The petitioner filed an appeal from his conviction and sentence.

## B. Appeal

On appeal, the petitioner raised the following grounds: (1) there was a fatal variance between the single conspiracy charged in Count One and the proof offered at trial; (2) the district court committed reversible error in denying his request for a jury instruction that would have allowed the jury to find either a single conspiracy or multiple conspiracies; (3) the verdict form given to the jury conflicted with the court's instructions as to the conspiracy, causing an ambiguity regarding the actual drug amounts attributed by the jury to each defendant; and (4) the district court erred in accepting the drug amounts attributed to him in his presentence report.

The Fourth Circuit affirmed the petitioner's conviction and sentence. See United States v. Leigh, 61 Fed. App. 43, 2003 WL 1194345 (4th Cir. 2003).

## C. Federal Habeas Corpus

### Petitioner's Contentions

(1) The Government's knowing use of false statements made by key witnesses was a denial of Movant's due process at law.

(2) Trial Counsel was ineffective for failing to impeach government's key witnesses.

(3) Counsel was ineffective due to failure to know applicable sentencing guidelines and relevant case law and thereby failing to object to apparent inaccuracy in Movant's Pre-Sentence Investigation Report.

(4) Appellate counsel was ineffective for failing to raise relevant conduct issue on appeal.

(5) The District Court erred in sentencing Movant to the total amount of alleged drugs involved in the conspiracy.

(6) The two-level enhancement was in error and in violation of Movant's due process rights.

(7) Movant was sentenced to an unlawful sentence.

**Respondent's Contentions**

(1) Grounds 1,5,6, and 7 are procedurally barred and even if they were not they are without merit.

(2) The petitioner was provided effective assistance of counsel.

**D. Recommendation**

Upon reviewing the record, I recommend that the petitioner's § 2255 motion be denied because some of his claims are without merit and some of his claims are procedurally barred.

## II. ANALYSIS

**A. Procedural Bar**

The petitioner raised ground 5 on direct appeal. Because the sentencing issue has already been raised and decided on direct appeal, this issue can not be reconsidered absent a showing of a change in the law. Davis v. U.S., 417 U.S. 333 (1974); Boeckenhaupt v. United States, 537 F. 2d 1182 (4th Cir. 1976). The petitioner has shown no change in the law. Thus, ground 5 should be dismissed.

The petitioner did not raise grounds 1, 6, and 7 on direct appeal. "In order to collaterally

3

attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas,186 F.3d 490, 492-493 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000); see Bousley v. United States, 523 U.S. 614 (1998). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Id. at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298 (1995).

The petitioner has attempted to demonstrate cause and prejudice by asserting that his appellate attorney was ineffective for failing to raise claims 1, 6, and 7 on appeal. He further asserts that he was prejudiced by counsel not advocating against the enhancement which resulted in 100 more months of incarceration. As discussed in section B3 of this Report and Recommendation, the petitioner's attorney was not ineffective on appeal. Thus, he has failed to show cause.

The petitioner also asserts that in the alternative he is actually innocent. He alleges that the Government's use of false testimony allowed him to be charged with a conspiracy of which he was not a part. However, the petitioner appealed his conspiracy conviction to the Fourth Circuit Court

4

of Appeals. His conviction was affirmed. The petitioner fails to support his claim of factual innocence with any evidence. Thus, grounds 1, 6, and 7 are procedurally barred and should be dismissed.

Lastly, the undersigned notes that while grounds 2, 3, and 4 were not raised on direct appeal, such claims are not subject to the cause and prejudice, and actual innocence analysis. A claim of ineffective assistance of counsel can be raised in a § 2255 proceeding, even though the claim could have been, but was not raised on direct appeal. Massaro v. United States, 538 U.S. 500 (2003). See also, United States v. Richardson, 195 F.3d 192, 198 (4th Cir.1999) (providing standard and noting that ineffective assistance of counsel claims generally should be raised by motion under 28 U.S.C. § 2255).

**B. Ineffective Assistance of Counsel**

According to the petitioner, his attorney was ineffective because he failed to impeach key witnesses. He also asserts that his counsel was ineffective for failing to know applicable sentencing guidelines and relevant case law and thereby failing to object to apparent inaccuracies in his Pre-Sentence Investigation Report. Lastly, he asserts that his appellate counsel was ineffective for failing to raise the relevant conduct issue on appeal.

Counsel's conduct is measured under the two part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90.

Second, the petitioner must be prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

### 1. Failure to Impeach Key Witnesses

The petitioner asserts that Bobby Breeden testified at trial that he had seen the petitioner with a quarter ounce of crack in February or March 1999. However, the petitioner alleges that from August 1996, until September 17, 1999, he was incarcerated at the Maryland Correctional Training Institution. According to the petitioner, his counsel "utterly failed to impeach and discredit Breeden's blatant false testimony." The petitioner argues that his attorney could have used a copy of his criminal record to impeach Breeden and that "a confrontation with Petitioner's obvious whereabouts would have at least shown the jury that even if Petitioner had sold or possessed drugs in the past, he was nevertheless innocent of the instant drug charges." (Doc. # 1053 p. 15). According to the petitioner, had his attorney impeached Breeden, the jury may have discredited the Government's case against him.

However, during his trial, the petitioner took the stand and told the jury he was in prison from August 1994, to February 1996, and from August 1996, to September 17, 1999 for drug

offenses.[1] Thus, there was evidence before the jury that the petitioner was incarcerated at the time Breeden allegedly saw him with crack.

Additionally, counsel argued during closing statements that the Government had the ability to obtain his criminal records and that "if those records were incorrect we would have seen them."

Moreover, contrary to the petitioner's assertions, counsel's decision to not question Breeden along the lines suggested by the petitioner was sound trial strategy. Strickland provides as follows:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland v. Washington, 466 U.S. at 689-690.

It is not for this Court to second guess how counsel decided was the best way to present the petitioner's case. Had counsel cross-examined Breeden regarding the date he allegedly saw the petitioner with crack, Breeden could have testified that he was confused with the date and saw the petitioner with crack on another date.

The petitioner also asserts that his attorney was ineffective for failing to impeach Breeden

---

[1] The petitioner has provided the Court with a Fax Transmission from the Wash. Co. Detention Center in Hagerstown, Maryland which states the petitioner was incarcerated at the Wash. Co. Detention Center for the periods of September 10, 1994, to April 14, 1995, and August 19, 1996, to January 24, 1997. He also submitted a memorandum from the Maryland Department of Public Safety and Correctional Services which indicates that the petitioner was incarcerated from January 24, 1997, and released via parole on September 17, 1999.

7

with his own criminal history. However, Breeden had testified about his own criminal involvement in the Fox Glen conspiracy. Thus, the petitioner has failed to explain how he was prejudiced by his attorney's failure to cross-examine Breeden regarding his criminal history.

The petitioner also asserts that his attorney did not adequately impeach Mike Viands because she failed to ask Viands to provide the dates when the drug transactions with the petitioner occurred. However, such questioning did occur and Viands states "maybe Spring, Summer of '99 up to no, about November I think it was."

Thus, the petitioner's claim regarding ineffective assistance of counsel regarding failure to impeach Government witnesses is without merit.

### 2.  Failure to Object at Sentencing

The petitioner asserts that his counsel was ineffective because she did not know the applicable sentencing guidelines and the relevant case law, and thus, failed to object to the inaccuracies in his presentence report. The petitioner asserts that he was held responsible for the relevant conduct of the entire conspiracy, including conduct which occurred prior to his joining the conspiracy. He further argues that the trial testimony was false. Additionally, he asserts that had the probation officer used the proper conversion method, he would have been responsible for 50-150 grams. He also asserts his attorney was ineffective for failing to recognize and object to the unknown and erroneous method of calculating drug weight conversion. Lastly, he argues that his attorney was ineffective for failing to strongly advocate against the two level enhancement for his role is the offense.

With regard to relevant conduct, pursuant to U.S.S.G., § 1B1.3, a drug offender's sentence

is based on his relevant conduct. Conduct not specified in the count of conviction is relevant if it is part of the same course of conduct or part of a common scheme or plan as the count of conviction. USSG § 1B1.3(a)(2); USSG § 3D1.2(d). A co-conspirator is liable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG § 1B1.3(a)(1)(B). See also, United States v. D'Anjou, 16 F. 3d 604, 614 (4th Cir. 1994).

The Government concluded that the petitioner's relevant conduct was 299.2 to 499.89 grams of crack, based upon the trial testimony of Kevin Warnick, Joey Breeden, Mike Viands, Bobby Breeden and James Carson regarding their direct crack dealings with the petitioner. The vast majority of the crack was related to transactions with Viands. The probation officer found that the relevant conduct amount was between 150 and 500 grams. Thus, the petitioner was not prejudiced by his attorney's failure to object to the calculation by the probation officer.

On appeal, the Fourth Circuit noted that the quantity of drugs attributed to the petitioner was based on the evidence at trial "rather than the total drug amounts attributable to the conspiracy as a whole during the time that Leigh was involved." United States v. Leigh, 61 Fed. App. 43, 2003 WL 1194345 (4th Cir. 2003).

Thus, the petitioner was not held responsible for the relevant conduct of the entire conspiracy. Therefore, there was no legitimate basis for the petitioner's attorney to object to the drug amounts. Moreover, the petitioner has not provided anything to demonstrate that his counsel did not understand the sentencing guidelines.

Lastly, with regard to his role in the offense, he has failed to demonstrate that the testimony was false. In fact, the jury heard the testimony regarding his drug activities and convicted him. A credibility determination was made by the jury and there is no evidence before the Court that the

9

testimony given at trial regarding the petitioner's drug activities was not credible.

Therefore, the undersigned concludes that the petitioner's claim that his attorney was ineffective at sentencing is without merit.

### 3. **Ineffective Assistance of Appellate Counsel**

The petitioner asserts that he was held responsible for conduct prior to joining the conspiracy and that his appellate counsel failed to raise the relevant conduct issue on appeal. He also asserts his attorney was ineffective for failing to raise the enhancements on appeal and counsel failed to appeal the use of unnamed participants to determine his drug quantities.

First, the relevant conduct issue was raised on appeal. The Fourth Circuit found that the drug quantities included only those drug amounts that were directly attributable to [the petitioner] based on the evidence at trial rather than the total drug amounts attributable to the conspiracy as a whole during the time that Leigh was involved." United States v. Leigh, 61 Fed. App. 43, 2003 WL 1194345 (4th Cir. 2003).

Further, counsel is not obligated to assert all nonfrivolous issues on appeal. Jones v. Barnes, 463 U.S. 745, 750 (1983). In determining whether an individual was provided ineffective assistance of counsel on appeal, the court must presume appellate counsel decided which issues would be most successful on appeal. Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir.1993), cert. denied, 510 U.S. 984 (1993). In fact, the Supreme Court noted as follows:

> [o]ne of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally. Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one.... [E]xperience on the bench convinces me that multiplying

assignments of error will dilute and weaken a good case and will not save a bad one.

Barnes, 463 U.S. 752 *(*quoting Jackson, *Advocacy Before the Supreme Court*, 25 Temple L.Q. 115, 119 (1951)).

"Notwithstanding Barnes, it is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim [on direct appeal] but it is difficult to demonstrate that counsel was incompetent." Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id.

There is nothing to demonstrate that counsel was ineffective on appeal. Counsel clearly raised the strongest issues on appeal.

This Court is not to second guess the decision of appellate counsel as to which claims to raise on appeal. Further, the petitioner has failed to demonstrate that the issues which were not raised on appeal were stronger than the issues which were appealed. In fact, as discussed below, grounds 1, 6, and 7 have no merit.

In Ground 1, the petitioner asserts that the Government used the false statements of Bobby Breeden to deny him due process of law. At trial, Breeden initially testified that he did not know the petitioner. Upon further questioning by the Government, Breeden stated that he saw the petitioner pass a quarter ounce of crack at Joey Breeden's trailer in February or March. When Bobby Breeden was cross-examined by defense counsel he testified that he saw the petitioner with crack in February or March 1999. The petitioner states that the statement is false because he was in jail and that the Government knew or should have known that the statement was false.

11

"[D]ue process is denied if the government knowingly uses perjured testimony against the accused to obtain a conviction. United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987). Further, in order to obtain habeas relief on the basis of perjury, the petitioner must "demonstrate in his petition for habeas corpus (1) that a witness made a false statement; (2) that the false statement was material; and (3) that the false testimony was knowingly and intentionally employed by the government in order to obtain a conviction. Mere conclusory charges of perjury and the knowing use of the alleged perjury is insufficient to warrant a hearing or habeas relief." Beasley v. Holland, 649 F. Supp. 561, 566 (S.D. W. Va. 1986).

As argued by the Government, the fact that petitioner was in jail in February or March 1999 does not make Breeden's testimony false. "Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." Griley, 814 F.2d at 971.

The Government asserts that "most likely the testimony was simply incorrect and its incorrectness would have merely been the result of confusion, an innocent mistake or simply due to a failure of recollection." (Doc. # p. 16). See Griley 814 F. 2d at 971.

The petitioner has not shown any misconduct on behalf of the Government and his attorney was not ineffective for failing to raise the issue on appeal.

In Ground 6, the petitioner asserts that the two level enhancement for his role in the offense violated his due process rights. At sentencing, Trooper Dillon testified that Joey Breeden stated during his debriefing that the petitioner brought three individuals to his residence "for the sole purpose of setting them up in Mr. Breeden's residence which was a well-known crack house." Trooper Dillon further testified that Breeden stated that the petitioner supplied the three individuals

with crack to sell and once the sales were completed, the petitioner would return to Breeden's house and collect the proceeds. The three individuals were known as Jerry, Vaugh and E. Additionally, the petitioner fronted drugs to Mike Viands.

U.S.S.G. § 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels."

Thus, the Court acted properly in enhancing the petitioner's sentence for his role in the offense and his attorney was not ineffective for failing to raise this issue on appeal.

In Ground 7, the petitioner argues that the evidence presented did not reveal that he ever possessed or distributed more than 50 grams of crack on one occasion and aggregated amounts cannot be used to prove a violation os 21 U.S.C. §841(b)(1)(A). The petitioner relies on United States v. Winston, 37 F. 3d 235 (6th Cir. 1994) to support his position. In Winston, the Sixth Circuit found as follows:

> [W]here a defendant violates subsection (a) [of 841] more than once, possessing less than 50 grams of cocaine base on each separate occasion, subsection (b) [of 841] does not apply, for there is no *single* violation involving "50 grams or more" of cocaine base. This is true even if the sum total of the cocaine base involved all together, over the multiple violations, amounts to more than 50 grams.

Id. at 240.

However, Count One charge the petitioner with violating 21 U.S.C. § 846. In United States v. Pruitt, 156 F. 3d 638 (6th Cir. 1998), the Sixth Circuit found that a conspiracy involving multiple overt acts is a violation of §841(a). The Court further stated that

> [a]lthough under *Winston* each of [defendant's] overt acts would be treated separately if the acts had been performed on an individual or ad hoc basis, [defendant's] participation in an organized conspiracy constituted a single violation of §841(a). It was therefore proper for the district court to aggregate the amounts of drugs attributable to [defendant] and to impose a mandatory life sentence under § 841(b)(1)(A).

13

Id. at 645.

Further, the Third Circuit has found that "Winston's holding disallowing aggregation of multiple drug transactions for §841(b) purposes did not extend to multiple drug transactions as part of a conspiracy." United States v. Gori, 324 F. 3d 234, 237 (3d Cir. 2003).

Consequently, the petitioner was not given an unlawful sentence, and his attorney acted reasonably in not raising this issue on appeal.

Therefore, based on the foregoing, the undersigned finds that the petitioner's appellate counsel was not ineffective.

**C. Blakely Claim**

Blakely v. Washington, 124 S. Ct. 2531 (2004) as an extension of Apprendi v. New Jersey, 530 U.S. 466 (2000), holds that "when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." Blakely, 124 S. Ct. at 2537 (citations omitted).

Recently, the Supreme Court has held that Blakely applies to federal sentencing guidelines. United States v. Booker, 125 S. Ct. 738 (2005). Specifically, in Booker the Supreme Court issued a two part decision. In the first part, the Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial because a judge, not a jury, determines facts which could increase the defendant's sentence beyond the sentence which could be imposed based on jury fact finding. In the second part of the decision, the Supreme Court severed the unconstitutional provisions from the Sentence Reform Act and made the guidelines advisory and established an unreasonableness standard of review for sentences on appeal. While the Supreme

Court determined that both of its holdings in Booker applied to all cases on direct review, the Supreme Court did not address whether Booker applies retroactively to cases on collateral review.

While the Fourth Circuit Court of Appeals has not ruled on the retroactivity of Booker, other circuits have held that Booker does not apply retroactively. See Varela v. United States, 400 F. 3d 864 (11th Cir. 2005); United States v. Price, 2005 WL 535361 (10th Cir. 2005); McReynolds v. United States, 397 F. 3d 479 (7th Cir. 2005); Humphress v. United States, 398 F. 3d 855 (6th Cir. 2005); Lloyd v. United States, 2005 WL 1155220 (3d Cir. 2005); Guzman v. United States, 404 F. 3d 139 (2d Cir. 2005). Thus, in accordance with these decisions, the undersigned recommends that the petitioner's claim be denied because Blakely and Booker do not apply retroactively to collateral review.

### D. Evidentiary Hearing

The petitioner requests an evidentiary hearing. 28 U.S.C. § 2255 provides in pertinent part as follows:

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

See also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

The petitioner's motion and the Government's response conclusively establish that the petitioner is entitled to no relief. Thus, he is not entitled to an evidentiary hearing.

### III. MOTION FOR DEFAULT JUDGMENT

Whether a default judgment should be entered is within the discretion of the court.

Papagianakis v. Samos, 186 F.2d 257 (4th Cir. 1950). Moreover, default judgments are not favored in habeas corpus cases. E.g., Ruiz v. Cady, 660 F.2d 337, 340 (7th Cir.1981); Hale v. Lockhart, 903 F.2d 545, 547-48 (8th Cir.1990); Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir.1987).

The Seventh Circuit noted in a case involving a request for default judgment when the respondent failed to make a timely response that:

> [a] default judgment is a sanction, and a sanction should be proportionate to the wrong. Releasing a properly convicted prisoner or imposing on the state the costs and uncertainties of retrying him, perhaps many years after the offense, is apt to be a disproportionate sanction for the wrong of failing to file a timely motion for an extension of time. This thinking informs the principle that default judgments are disfavored in habeas corpus cases. Habeas corpus is a strong remedy and is therefore reserved, as we had occasion to note recently, for serious rather than merely technical violations of rights.

Bleitner v. Welborn, 15 F. 3d 652, 653 (7th Cir. 1994)(internal citations omitted).

On April 8, 2004, the Court ordered the respondent to answer the petitioner's motion within 30 days of the entry of the Order. On June 2, 2004, the respondent filed a motion to file the response out of time. By Order entered on June 8, 2004, the request was granted. Default judgment is not proper. Thus, the petitioner's request for default judgment should be denied.

## IV. **RECOMMENDATION**

The undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and his motion for default judgment and **DENYING AS MOOT** his July 19, 2004 motion to continue or stay judgment.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such

16

objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of Court is directed to mail a copy of this Recommendation to the *pro se* petitioner and the United States Attorney for the Northern District of West Virginia.

Dated: June 3, 2005

>James E. Seibert
>JAMES E. SEIBERT
>UNITED STATES MAGISTRATE JUDGE